
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 7, 2017

**STATE OF TENNESSEE v. SHANERICK ABRAHAM**

**Appeal from the Criminal Court for Shelby County**
**No. 15-00697        Glenn Ivy Wright, Judge**

_____

**No. W2016-01497-CCA-R3-CD**

_____

A Shelby County Criminal Court jury convicted the defendant, Shanerick Abraham, of aggravated robbery. On appeal, the defendant argues the evidence was insufficient to support his aggravated robbery conviction because the victim voluntarily gave the defendant money, and the alleged taking was temporally remote to the subsequent act of violence. The defendant additionally alleges ineffective assistance of counsel. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Samuel J. Muldavin, Memphis, Tennessee (on appeal), John Scott, Memphis, Tennessee (at trial), for the appellant, Shanerick Abraham.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Austin Scofield, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On October 17, 2014, Larry Saulsberry, the defendant, and others were shooting dice. Eventually, only Mr. Saulsberry and the defendant remained in the game. Initially, Mr. Saulsberry was losing several hundred dollars to the defendant. However, when Mr. Saulsberry started to win his money back, the defendant became angry. Having won his money back and because the defendant was upset, Mr. Saulsberry left, accidentally

leaving his cell phone behind. About thirty minutes later, Mr. Saulsberry returned to retrieve his phone but could not locate it and accused the defendant of stealing it. The defendant pulled out a gun and said, "You feel like I got your phone; you give me everything." Mr. Saulsberry backed away in fear, trying not to draw attention to the situation.

Meanwhile, the victim, Samuel Washington, was drinking beer with a coworker outside a nearby neighborhood store when he saw the defendant waiving a gun around and walking toward Mr. Saulsberry. As Mr. Saulsberry backed away from the defendant, the victim heard the defendant say, "You need to drop that off," slang for "give me whatever is in your pockets." The victim intervened, stood between Mr. Saulsberry and the defendant, and told the defendant to put down the gun. According to the victim's trial testimony, the defendant then said, "Well, you can drop it off, too." While the victim testified he was not in fear, the defendant was holding a gun, and the victim hoped "he wouldn't do nothing foolish with it," so he immediately took $63.00 from his pocket. According to the victim, he would not have done this had the defendant not wielded a gun. The defendant then grabbed the money and smacked the victim in the face with the gun, rendering him unconscious. The victim was unsure about how long he was unconscious.

Mr. Saulsberry offered slightly different testimony regarding the events occurring that evening. According to Mr. Saulsberry, once the defendant pulled out his gun and started walking toward him, the victim intervened and said, "Jamal,[1] why are you doing this? We are all family. If it's about some money; here's some money." The victim subsequently handed the defendant money from his pocket, and the defendant smacked the victim in this face with his gun.

After the attack, the victim was transported to the hospital and underwent surgery to repair his broken jaw. Detective Steven Foglesong with the Memphis Police Department visited the victim at the hospital to get more information regarding the sequence of events. There, the victim informed Detective Foglesong he had been robbed and assaulted by the defendant. Detective Foglesong interviewed Mr. Saulsberry as well, and Mr. Saulsberry also identified the defendant as the victim's assailant. At trial, the victim, Mr. Saulsberry, and Detective Foglesong all identified the defendant in the courtroom.

The State called the victim, Mr. Saulsberry, and Detective Foglesong to testify at trial. Following a *Momon* hearing, the defendant declined to testify and did not call any witnesses. The jury found the defendant guilty of aggravated robbery. Following a

---

[1] The defendant's nickname is "Jamal."

sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender, to nine years in confinement. The defendant filed a motion for a new trial, which was denied by the trial court. This timely appeal followed.

## *Analysis*

On appeal, the defendant first challenges the sufficiency of the evidence to support his aggravated robbery conviction. The defendant contends the victim voluntarily relinquished his money in an effort to stop the altercation between Mr. Saulsberry and the defendant, calling it a "bribe." The defendant further asserts the defendant struck the victim subsequent to the taking rather than concomitant or contemporaneous with the taking, so the evidence did not support a robbery conviction. Finally, the defendant contends he received ineffective assistance of counsel at trial due to trial counsel's failure to object to leading questions. After a thorough review of the record, we affirm the judgment of the trial court.

## I.    Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Aggravated robbery is robbery accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103(a).

Violence is defined as "physical force unlawfully exercised so as to damage, injure or abuse." *State v. Fitz*, 19 S.W.3d 213, 217 (Tenn. 2000). Pointing a weapon satisfies the element of violence. *State v. Allen*, 69 S.W.3d 181, 186 (Tenn. 2002). Fear is "fear of present personal peril from violence offered or impending." *State v. Bowles*, 52 S.W.3d 69, 80 (Tenn. 2001).

"[W]hether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed." *State v. Owens*, 20 S.W.3d 634, 637 (Tenn. 2000). To constitute a robbery, the requisite violence or fear must precede or be concomitant or contemporaneous with the taking. *Id.* at 641. In *State v. Swift*, 308

S.W.3d 827 (Tenn. 2010), our Supreme Court confirmed "[t]he temporal proximity between the taking of the property and the use of violence or fear is the sole relevant factor" when elevating theft to robbery, and this temporal proximity is assessed by ascertaining when the taking was complete. *Id.* at 829.

The defendant first asserts the evidence was insufficient to support his aggravated robbery conviction because the victim voluntarily gave him money so he would put down the gun, essentially offering a bribe. This argument defies logic, and if accepted as a viable defense, would negate almost all aggravated robbery charges. According to the proof presented by the State at trial, the victim intervened in the altercation between Mr. Saulsberry and the defendant in an effort to get the defendant to put away his gun. After the victim stepped between the men, the defendant continued to hold the gun and commanded the victim to "drop it off," which the defendant understood as slang for "give me whatever is in your pockets." The victim testified that while he was not afraid, he would not have pulled money out of his pocket after being commanded to do so had the defendant not been holding a gun. Moreover, the defendant subsequently used the gun to knock the victim unconscious. The use of a gun during a taking satisfies the element of "violence." *See State v. Travis Seiber*, No. W2015-00221-CCA-R3-CD, 2016 WL 716307, at *6 (Tenn. Crim. App. Feb. 23, 2016). Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. The defendant is not entitled to relief on this issue.

Next, citing *Owens*, the defendant contends the evidence was insufficient to support his aggravated robbery conviction due to the lapse of time between the taking and violent act. The defendant argues the victim testified he was "just standing there drinking [his] beer" when the defendant smacked him in the face with his gun, making the use of violence temporally remote from the taking. Again, the defendant's argument is without merit.

Both *Owens* and *Swift* address the necessary proximity of the taking to the use of violence when determining the sufficiency of the evidence to support convictions for robbery and aggravated robbery. In *Owens*, the defendant took stolen merchandise out of the store and ran approximately five blocks before any act of violence or fear occurred, so our Supreme Court determined the evidence was insufficient to support the defendant's robbery conviction. *Owens*, 20 S.W. 3d at 637-642. In *Swift*, the defendant completed the taking by concealing unwrapped stolen merchandise in his pants before swinging a knife at store employees when exiting the store several minutes later. *Swift*, 308 S.W.3d at 831. Because the taking was complete prior to the act of violence or use of fear, our Supreme Court held the evidence was insufficient to support the defendant's conviction for aggravated robbery. *Id.*

- 5 -

In the present matter, the State presented evidence the defendant held the gun in plain sight throughout his encounter with the victim. After being commanded to give the defendant the contents of his pockets, the victim gave the defendant $63, and the defendant hit the victim in the face with his gun. Unlike *Swift* and *Owens*, where the use of fear or violence occurred well after the taking, the taking here was simultaneous with the use of violence. When viewing the evidence presented at trial in the light most favorable to the State, the evidence was sufficient to support his aggravated robbery conviction. The defendant is not entitled to relief on this issue.

## II.     Effectiveness of Counsel

Finally, the defendant argues he received ineffective assistance of counsel because his attorney failed to object to two leading questions. Because the defendant raises ineffective assistance of counsel for the first time on appeal, it has been waived. Tenn. R. App. P. 3(e); *see also State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Moreover, the defendant's failure to raise ineffective assistance of counsel in his motion for a new trial deprived the trial judge of the opportunity to evaluate trial counsel's performance, so this Court does not have a proper record before it. *State v. Randell Tilley*, No. 53, 1990 WL 205232, at *2 (Tenn. Crim. App. Dec. 14, 1990). For these reasons, this Court has cautioned:

> Raising issues pertaining to the ineffective assistance of counsel for the first time in the appellate court is a practice fraught with peril. The appellant runs the risk of having the issue denied due to a procedural default, or, in the alternative, having a panel of this Court consider the issue on the merits. The better practice is to *not* raise the issue on direct appeal under the circumstances. The issue can be subsequently raised in a post-conviction proceeding if the appellant's direct appeal, as here, is not successful.

*State v. Jimmy L. Sluder*, No. 1236, 1990 WL 26552, at *7 (Tenn. Crim. App. March 14, 1990) (emphasis in original).

Because the defendant raises his ineffective assistance of counsel claim for the first time on appeal, it has been waived and will not be considered by this Court. The defendant is not entitled to relief on this issue.

*Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE